UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-22020-CIV-MARTINEZ/DUBÉ

LUIS PEREZ EUPIERRE,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before this Court on the Motion for Summary Judgment filed by the Plaintiff (D.E. #16) and the Motion for Summary Judgment filed by the Defendant (D.E. #23) pursuant to a Clerk's Notice of Magistrate Judge Assignment entered by the Clerk of Court, United States District Court for the Southern District of Florida. The issue before this Court is whether the record contains substantial evidence to support the denial of benefits to Plaintiff, Luis Perez Eupierre (hereinafter "Eupierre" or "Plaintiff").

## I. FACTS

On September 22, 2006, the Plaintiff filed an application for supplemental security income, alleging a disability onset date of October 2, 2003. (R. 84-89).[1] The application was denied initially and on reconsideration. (R. 48–54, 57–60). An initial hearing was held on November 13, 2008. (R. 34–47). Following the hearing, the ALJ issued a decision denying the request for benefits. (R. 15–33). A request for review filed with the Appeals Council was denied. (R. 1–3).

---

1. All references are to the record of the administrative proceeding filed as part of the Defendant's answer.

The Plaintiff, age 57 at the time of the hearing on November 13, 2008, testified that he is divorced and does not have any children under the age of 18. (R. 39). He also testified he received a medical degree in Cuba; he previously worked as a medical doctor in Mexico for 15 years; and later was a warehouse clerk after arriving in the United States. (R. 40–41). The Plaintiff stated he specialized in Neurosurgery and was licensed to practice in both Cuba and Mexico, however, he was only licensed as a general practitioner in Mexico. (R. 40–41). The Plaintiff also stated that as a warehouse clerk he mostly stocked shelves and would alternate between standing and sitting as he worked. (R. 41). The Plaintiff does not read, write, or speak English and was assisted by an interpreter during the administrative hearing.

The Plaintiff stated he migrated to the United States on February 9, 2003, after being assaulted while working as a doctor in Mexico. (R. 41–42). He claims to have been kidnaped at gun point and held hostage until the perpetrators were able to withdraw money from his bank account and steal items from his car. (R. 41–42). According to the Plaintiff, the perpetrators placed a gun to his head which "affected [him] a lot...." (R. 42).

According to Eupierre, he worked in the United States for 2 years, but he has not worked since August 2006 because of depression. (R. 42). As a result of depression, the Plaintiff was hospitalized in August 2006, and claimed to have a lot of sadness and no will power to do anything. (R. 42). The Plaintiff testified he experiences episodes of panic attacks which he controls with medication. (R.43). The Plaintiff feels worthless and incapable of performing any task with continuity, and has feelings of low self-esteem. (R. 43).

The Plaintiff testified to a lack of concentration. He said it is difficult for him to retain interest in a single program on television and instead continuously changes the channel. (R. 43). Additionally, Eupierre stated he only sleeps for four or five hours a night, and he attributes what little sleep is

achieved to the drowsy side-effects of his medication. (R. 43). The Plaintiff also claims to suffer from "social phobia" which he describes as not "want[ing] to be around other people." The Plaintiff testified to having "an irregularity of the brain function" which he manages with Lithium and Zyprexa. (R. 44).

The Plaintiff testified to suffering a crisis that lead to his hospitalization at the Miami Behavioral Health Center. (R. 42, 44). The Plaintiff stated he began receiving mental health treatment a couple of years before his hospitalization by a private physician. (R. 45). The Plaintiff said he began treatment for bipolar in 2004, however, no records supporting the 2004 diagnosis were provided. (R. 45). The Plaintiff testified that he currently lives with his ex-wife, Alfreda Alzore, and his former mother-in-law. (R. 45–46). Eupierre said he usually remains in the home during the day, but occasionally takes walks. (R. 46).

In addition to the testimony presented at the hearing, medical records were submitted to the ALJ. However, a review of the medical records and the specific issues raised by the Plaintiff in his Motion for Summary Judgment shows the resolution of the issues do not require this Court to specifically set out all the medical evidence in detail. Accordingly, this Court will discuss the legal issues involved and will incorporate the facts as appropriate within the arguments presented below.

After a hearing and review of the record, the ALJ issued an opinion finding that the Plaintiff had affected mood disorder which was a severe impairment. (R. 24). The ALJ further found that the Plaintiff did not have an impairment or combination of impairments that meets or equals a listing. (R.24). The ALJ determined that the Plaintiff retained the residual functional to perform a full range of work at all exceptional levels, but with the following non-exertional limitations:

> [H]e is limited to performing those tasks normally associated with unskilled work.... he can understand, carry out and remember simple instructions, respond appropriately to supervision, and usual work situations and deal with changes in a routine work setting.

(R. 26). Furthermore, the ALJ found that the Plaintiff could return to his past relevant work as a warehouse assistant. (R. 32). In the alternative, the ALJ further determined that at step five, the Plaintiff could perform other jobs that exist in significant numbers in the national economy. (R. 33). The ALJ concluded that the Plaintiff was not disabled within the meaning of the Social Security Act. (R. 33).

## II. LEGAL ANALYSIS

Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. section 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Foote v. Chater, 67 F.3d 1553 (11th Cir. 1995); Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988). The reviewing court must also be satisfied that the decision of the Commissioner correctly applied the appropriate legal standards. See, Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). The court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. See, Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Baker v. Sullivan, 880 F.2d 319 (11th Cir. 1989).

The restrictive standard of review set out above applies only to findings of fact. No

presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. Cornelius v. Sullivan, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

Social Security regulations establish a five-step sequential analysis to arrive at a final determination of disability. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920 (a)–(f).

The ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry ends. 20 C.F.R. § 404.1520(b). In the second step, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If such a finding is not made, then a finding of non-disability results, and the inquiry ends. 20 C.F.R. § 404.1520(c).

At step three, the ALJ compares the claimant's severe impairments to those in the listing of impairments. 20 C.F.R. § 404.1520(d), subpart P, appendix I. Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that if such impairments are established the regulations require a finding of disability without further inquiry into the claimant's ability to perform other work. See Gibson v. Heckler, 762 F.2d 1516, 1518, n.1 (11th Cir. 1985). If the impairment meets or equals a listed impairment then disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing his or her past relevant work. If the claimant cannot perform his or her past relevant work, then a prima facie case of disability is established, and the burden of going forward with the

evidence shifts to the Commissioner to show, at step five, that there is other work available in the national economy which the claimant can perform. 20 C.F.R. § 404.1520(e)–(f).

The Plaintiff holds the burden of proof that an impairment or combination of impairments has caused significant limitations upon the Plaintiff to perform basic work activities. See C.F.R. § 416.921 (1991). The inability to perform previous work relates to the type of work performed, not to merely a specific prior job. See Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986).

The Plaintiff's first point of contention is that the ALJ failed to accord adequate weight to the opinion of the Plaintiff's treating psychiatrist. The opinion of a treating physician is entitled to substantial weight unless good cause exists for not heeding the treating physician's diagnosis. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause has been seen when the treating doctor's opinion was not bolstered by the evidence; the evidence supported a contrary finding or the opinion was conclusory or inconsistent with the physician's own medical records. If the ALJ disregards the opinion of a treating physician, the ALJ must clearly articulate his reasons. See Phillips v. Barnhart, 357 F.3d 1232, 1240–41 (11th Cir. 2004).

Treatment notes from the Miami Behavioral Health Center, Inc. (hereinafter "MBHC") reveal that the Plaintiff was seen by Nelson Hernandez, M.D., the Plaintiff's treating psychiatrist, from July 2006 through July 2008. (R. 197-241). The vast majority of the treatment notes indicate that the Plaintiff's mood was anxious and depressed, and his affect was labile. However, the same treatment notes also indicate that Eupierre had appropriate appearance; a cooperative attitude; unremarkable speech; normal motor behavior; an unremarkable thought process and content; was alert and oriented as to time, place and person; unremarkable memory; and "fair" insight, judgement, and reliability. The Plaintiff's GAF scores during this time period ranged from 35 to 59. (R. 197-241).

On June 8, 2007, Dr. Hernandez completed a Medical Assessment of Ability to do Work-Related Activities (Mental) and rated the Plaintiff as "poor" in each listed category. Dr. Hernandez noted the Plaintiff to be suffering from intrusive thoughts, impulsiveness, grandiose, paranoia, delusions, suspicions, an inability to focus, a lack of memory, and severe cognitive defects. (R. 193–194).

A second Medical Assessment of Ability to do Work-Related Activities (Mental) was completed by Dr. Hernandez on July 18, 2007, which was almost identical to the previously completed Assessment. Dr. Hernandez noted "poor" in all categories with the exceptions of two: the "ability to understand, remember and carry out simple job instructions," and the "ability to maintain personal appearance," which were noted as "fair." Dr. Hernandez found the Plaintiff suffered from severe depression and anxiety. (R. 195–196).

On October 29, 2008, a third Medical Assessment of Ability to do Work-Related Activities (Mental) was completed by Dr. Hernandez. The Plaintiff was again rated as "poor" in all categories except in the "ability to maintain personal appearance," which was noted as "fair." Dr. Hernandez noted the Plaintiff suffered from difficulty in attention and concentration, mood variations, intermediate memory impairment, racing thoughts, and paranoia. (R. 243-244).

The ALJ reconciled the discrepancy between the Medical Assessments of Ability to do Work-Related Activities (Mental) and Dr. Hernandez's treatment notes as follows:

> The claimant continued to report some depression, anxiety and labile affect, but no delusions and normal thought processes and content. Memory was also unremarkable, with fair insight, judgement and reliability, but Dr. Hernandez continued to report GAF scores in the 30s despite the brief visits, the improving symptoms. I find these scores inconsistent with the residual symptoms reported in his own treatment notes and with his own objective findings and reject them. I further accord little weight to the reports of residual severe symptoms since they appear to be based on the claimant's self-reports.

(R. 30). The ALJ further stated that "it is the brevity of the treatment visits and the lack of reference to objective tests... that leads me to reject and accord little weight specifically to the GAF scores and to the 2007 and 2008 medical questionnaires." (R. 31). Dr. Hernandez conducted thirty minute sessions every two weeks even as he noted decreased attention and concentration on January 4, 2008. (R. 235). The ALJ questioned such conservative management of the Plaintiff's disability because it "does not reflect at all the type of medical treatment one would expect for a totally disabled individual, especially in view of the alleged severity of the impairment." (R. 27).

In further addressing concerns regarding Dr. Hernandez's evaluations, the ALJ noted the following:

> It is precisely the lack of reference to these simple tests as a matter of routine that make his statements suspect and which lead me to believe that [] Dr. Hernandez's treatment notes and assessments are solely based on the claimant's self-reports, rather than on his own objective findings based on testing. Because the evidence strongly suggests that Dr. Hernandez's GAF assessments and findings were mostly based on the claimant's self-reports not on his own objective observations or tests, I accord his GAF scores little weight.

(R. 31).

On November 17, 2006, the Plaintiff underwent a general clinical evaluation and mental status examination by Cristian del Rio, Psy.D. (R. 156-159). The Plaintiff stated, "I still feel depressed, but the medication is helping." (R. 156). Dr. del Rio recounted the Plaintiff's history and noted that Eupierre was cooperative and his level of alertness was hypervigilant. The Plaintiff's concentration and attention were intact; speech was logical and goal-directed; expressive and receptive language functions appeared grossly intact; eye contact was variable; motor activity slow; no unusual motor behaviors were noted; gait was unremarkable; and he denied any sensory problems or limitations. (R.

157).

Additionally, Dr. del Rio noted the Plaintiff was oriented as to time, date, place and situation; mental control and attention span were normal; working, recent and remote memory were intact; and affect seemed labile and appropriate to the content of his speech. (R. 157-158). The Plaintiff mentioned that he felt lonely and overwhelmed at home; his mood fluctuated from depressed to expansive; and Dr. del Rio noted indications of emotional distress "charactered by frustration, irritability, elevated anxiety and signs of depression" and "signs of mania at times." (R. 158). Dr. del Rio also noted that the Plaintiff's "self-reporting indicating only minimal distress was inconsistent with the examiner's observations. Under reporting of symptoms is consistent with individuals experiencing a manic or hypomanic state, or can be due to the stabilization related to medication effectiveness." (R. 158).

According to Dr. del Rio, the Plaintiff's judgment was variable with no indications of major lapses in judgment in his daily activities; no delusions or perceptual distortions were reported; he is able to care for himself; and no social activity restrictions were noted. Relating to the Plaintiff's ability to do work-related activities, Dr. del Rio opined as follows:

> There are no gross cognitive impairments that will interfere with this claimant's ability to perform work activities. However, due to his mental health condition it is unlikely that he will be able to adapt to a work environment without treatment, and he is likely to decompensate under stress. He may improve with treatment. He may be capable of employment if reasonable accommodations are made. If employed, he should perform part-time, light-duty work in an environment that is minimally stressful.

(R. 158-159). Dr. del Rio diagnosed the Plaintiff with Bipolar II Disorder and assigned him a GAF of 58. (R. 159).

The ALJ accorded considerable weight to Dr. del Rio's Psychological Report dated November 11, 2006, by stating that the "single interview is the only evaluation on record that is based on actual tests of the claimant's overall functioning, including memory, cognitive and executive functions as well as his ability to maintain attention and concentration." (R. 28).

In order to properly evaluate the Plaintiff's mental ability to do basic work activities, the ALJ must evaluate four areas of function in accordance with 20 C.F.R. section 404.1520a and section 416.920a. The ALJ further reviewed the Plaintiff's mental impairments in detail and concluded that the Plaintiff had no restrictions in activities of daily living, mild difficulties in social functioning, moderate difficulties in concentration, persistence or pace, and one documented episode of decompensation with significantly improved symptoms after in-house and outpatient medication management visits. (R. 24-25).

Therefore, it is the opinion of this Court that the ALJ did not err in according little weight to the opinion of the Plaintiff's treating psychologist as the ALJ specifically reviewed the treatment records and determined them to be inconsistent with the doctor's findings.

The Plaintiff next contends that the ALJ erred by discrediting the Plaintiff's allegations of disability. The credibility of the Plaintiff's testimony must also be considered in determining if the underlying medical condition is of a severity which can reasonably be expected to produce the alleged pain. Lamb, at 702. If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Wilson v. Barnhart, 284 F. 3d 1219, 1225 (11th Cir. 2002). Failure to articulate the reasons for discrediting subjective testimony requires as a matter of law, that the testimony be accepted as true. Id. While, an ALJ may not reject a plaintiff's subjective complaints of pain simply by the lack of objective evidence, the allegations of a severe impairment should be

supported by medically acceptable clinical and laboratory diagnostic techniques and allegations of pain should be weighed with the overall record which includes clinical data, testimony, demeanor at the hearing, frequency of treatment, response to treatment, use of medications, daily activities, motivations, credibility and residual functional capacity. Watson v. Heckler, 738 F. 2d 1169, 1172–73 (11th Cir. 1984).

The ALJ first points to the inconsistency between the Plaintiff's claim of disability due to a 2003 abduction and his ability to maintain employment as a medical assistant and as a warehouse assistant during subsequent years:

> [T]he claimant's allegedly disabling impairment was present at approximately the same level of severity at the alleged onset date and at any time afterwards.... [T]he fact that the impairment(s) did not prevent the claimant from working at that time strongly suggests that it would not currently prevent work, especially in view of the fact that he engaged in highly skilled work at SGA levels after the alleged traumatic event that lead to his allegations of disability starting in October 2003.

(R. 23). The Dictionary of Occupational Titles classifies a medical assistant (DOT # 079.362-01) as light, skilled work with an SVP of 6, whereas warehouse worker (DOT # 922.687-058) is classified as medium, unskilled work with an SVP of 2. (R. 32). The ALJ also notes the claimant's admission that he neither reduced the number of hours that he worked, nor made any job-related changes such as attendance, help needed, or employers. (R. 23, 104). However, the Plaintiff did admit to an alteration of job duties, but the specific alteration is not provided. (R. 104).

Additionally, the ALJ highlights the Plaintiff's inconsistent statements regarding the commencement of his disability:

> [T]he claimant alleged he had also worked as a warehouse assistant in a cargo business through 2004 (2E/4E). Subsequently, the claimant

>recanted his prior assertions that he worked only until 2004 and in his work-history report admitted he had worked until the 2006 psychiatric commencement, which was due to a manic episode (2E and 3E).

(R. 23).

Lastly, the Plaintiff was unable to provide any evidence of medical treatment prior to 2006. The Plaintiff testified that he received treatment from Dr. Lupis prior to 2006, however, the doctor is no longer in practice and records were unavailable. (R. 45).

The ALJ concluded that the Plaintiff's claim of disability is not credible because the Plaintiff gave inconsistent employment dates, continued to work after the date he cited as the commencement of his disability, and failed to provide requested evidence of pre-2006 medical treatment. (R. 23). It is the opinion of this Court that the ALJ properly evaluated the available medical and testimonial evidence and provided explicit and adequate reasons supporting her conclusion.

### III. CONCLUSION AND RECOMMENDATION

Based on the foregoing, this Court finds that the decision of the ALJ was supported by substantial evidence and that the correct legal standards were applied. Therefore, it is the recommendation of this Court that the decision of the Commissioner be **AFFIRMED**. Accordingly, the Motion for Summary Judgment filed by the Plaintiff (D.E. #16) should be **DENIED** and the Motion for Summary Judgment filed by the Defendant (D.E. #23) should be **GRANTED**.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from service of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable José E. Martinez, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. Loconte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988); R.T.C. v. Hallmark Builders, Inc., 996

F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND ORDERED** this \_\_\_7\_\_\_\_ day of April, 2010.

ROBERT L. DUBÉ
UNITED STATES MAGISTRATE JUDGE